ARKANSAS DEPARTMENT OF HUMAN SERVICES *v.*
Allen MAINARD, A Juvenile, Linda Collier, Circuit Judge,
The Circuit Court of Van Buren County, Arkansas;
Kenneth Hales, Director, Division of Youth Services;
and Bob McCracken, Facility Director,
Cornell Companies, Inc.

04-515                                              188 S.W.3d 901

Supreme Court of Arkansas
Opinion delivered June 24, 2004

[Rehearing denied September 9, 2004.]

206

*Gray Turner*, for petitioner.

*Gina H. Reynolds*, for respondent Allen Mainard.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace* and *Melanie Winslow Hoover*, Ass't Att'ys Gen., for respondent Linda Collier.

Tom Glaze, Justice. In this case, we are presented with a petition for writ of certiorari, as well as an appeal from the denial of a petition for writ of habeas corpus. By *per curiam* opinion dated June 2, 2004, we have granted the Arkansas Department of Human Services' motion to expedite consideration and have agreed to hear the matter of the two extraordinary writs concurrently. *See Arkansas Dep't of Human Servs. v. Mainard*, 04-515, 357 Ark. 580, 184 S.W.3d 24 (2004) *(per curiam)*.

On January 12, 2000, the Van Buren County prosecuting attorney filed a family-in-need-of-services ("FINS") petition in the Juvenile Division of Van Buren County Chancery Court, seeking a number of services for juvenile Allen Mainard and his family. An order was entered on January 19, 2000, adjudicating Allen to be in need of services. At some point, Allen's parents' parental rights were terminated, and he is presently in the legal custody of the Arkansas Department of Human Services ("DHS"). In 2003, while at a therapeutic foster care program in Pulaski County, Allen participated in an act of criminal mischief. He was subsequently adjudicated delinquent for this act in the juvenile division of Pulaski County Circuit Court and committed to the Division of Youth Services ("DYS").

Upon his discharge from DYS in January of 2004, Allen was given a number of rules by which to abide. In March of 2004, Allen's attorney ad litem, Jan Panella, contacted Judge Collier of the juvenile division of Van Buren County Circuit Court and asked for an emergency review of Allen's case. On April 2, 2004, Judge Collier entered an order in which she placed Allen in detention "as the least restrictive placement due to his chronic

running away," and ordered DYS's person responsible for Allen's aftercare plan to appear at the next hearing.

A review order, dated April 14, 2004, provided that Allen was in need of the services of DHS. Further, the order declared that, if Allen were to absent himself from his placement, law enforcement was to detain him and the Van Buren County Sheriff was to transport him to the Faulkner County Detention Center until a hearing could be held. A review hearing was also scheduled for April 28, 2004.

On April 27, 2004, DHS filed a petition for order of citation for contempt. In its petition, DHS noted that the court had previously ordered Allen to obey the rules of his placement and school. However, DHS alleged Allen had violated those rules and had absented himself from his placement on multiple occasions. After a hearing on April 28, 2004, Judge Collier issued an order of commitment on April 29, finding Allen to be in criminal contempt and in violation of his DYS aftercare plan. After a review hearing on May 4, 2004, Judge Collier issued another order in which she directed DYS to accept Allen by 3:00 p.m. on Wednesday, May 4, 2004, pursuant to the court's April 28 commitment order.

DHS immediately moved to set aside Judge Collier's commitment order, arguing that no juvenile could be committed to DYS unless the juvenile has been found guilty of committing a criminal act and adjudicated a delinquent. Because Allen had not committed a criminal act, nor had he been found delinquent, DHS asserted that the judge lacked the authority to order him committed to DYS. The court denied DHS's motion to set aside.

On May 10, 2004, Allen filed an emergency petition for writ of habeas corpus in the Saline County Circuit Court (where DYS's Alexander Youth Facility is located), alleging that he had no notice or opportunity to defend against the contempt charges. The Saline County Circuit Court denied the petition on May 12, 2004, and Allen immediately filed a notice of appeal. In addition, DHS filed a petition for writ of certiorari in this court on May 12, 2004. In its petition, DHS alleged that Judge Collier's commitment order was defective, that Allen's due process rights had been violated, and that the petition for citation of contempt did not conform with the requirements of Ark. Code Ann. § 16-10-108 (Repl. 1999). As mentioned above, we have agreed to consider the matter of these two extraordinary writs concurrently.

We deal first with Allen's petition for writ of habeas corpus, as it is dispositive of his case. Our standards for granting the

great writ are well established. The writ of habeas corpus shall be issued upon proper application by a justice of the Supreme Court or a judge of the circuit court, Ark. Code Ann. § 16-112-102(a)(1) (Supp. 2003), and shall be granted forthwith to any person who shall apply for the writ by petition showing, by affidavit or other evidence, probable cause to believe he or she is detained without lawful authority. Ark. Code Ann. § 16-112-103(a)(1) (Supp. 2003). Habeas corpus has been the traditional form of relief under circumstances where juveniles are concerned. *See Robinson v. Shock*, 282 Ark. 262, 667 S.W.2d 956 (1984).

Generally, the writ will not be issued if the petitioner is in custody pursuant to a valid order, or under process regular on its face and the court making the commitment did not lack jurisdiction. *Id.*, 282 Ark. at 265 (citing *Bargo v. Lockhart*, 279 Ark. 180, 650 S.W.2d 227 (1983)); *see also Mackey v. Lockhart*, 307 Ark. 321, 819 S.W.2d 702 (1991). However, as this court wrote in *Robinson*, juvenile offenders are not adult prisoners and are not treated as such:

> Although some overlapping occurs, the entire process and the purpose of the juvenile code set it apart from the criminal code, and many of the considerations involved in dealing with juvenile offenders are significantly different. Therefore, what may constitute a valid order for an adult prisoner under our case law will not be facially valid where a juvenile offender in custody is involved.

*Id.*

In his emergency petition for writ of habeas corpus, Allen first argues that the trial court's commitment order is invalid on its face, because it does not list any delinquent acts. Under Ark. Code Ann. § 9-28-208(a) (Repl. 2002), an order of commitment to DYS "shall state that the juvenile is found to be delinquent or to have committed a crime and shall state information regarding the underlying facts of the adjudication." Here, Allen was never adjudicated delinquent; instead, he was found to be in contempt of court. In addition, the order of commitment states that the commitment is "based upon [a] finding of criminal contempt and violation by juvenile of DYS Aftercare Plan." Allen argues that this renders the order invalid on its face.

However, the court's finding that the commitment was based upon a finding of criminal contempt and violation of the aftercare plan satisfies the requirements of § 9-28-208(a), because

criminal contempt is a crime in the ordinary sense. *See Wood v. Goodson*, 253 Ark. 196, 485 S.W.2d 213 (1972) (citing *Bloom v. Illinois*, 391 U.S. 194 (1968)[1]). Thus, the order facially meets the requirements of the law.

Allen's next argument, however, has merit. In his petition for writ of habeas corpus, Allen contends that the trial court did not have the authority to commit him to DYS under the statutes governing FINS cases. Ark. Code Ann. § 9-27-336(a) (Supp. 2003) specifically provides that a "juvenile who . . . has been adjudicated . . . a member of a family in need of services *shall not be placed or detained in a secure detention facility, in a facility utilized for the detention of alleged or adjudicated delinquent juveniles,* or in a facility utilized for the detention of adults held for, charged with, or convicted of a crime[.]" (Emphasis added.) An *exception* to this rule is found in § 9-27-336(a)(2)(A), which provides that an "adjudicated [FINS] juvenile may be held in a juvenile detention facility when the juvenile court finds that the juvenile violated *a valid court order.*" (Emphasis added.)

■ Section 9-27-336(a)(2)(B) further provides that, for the purposes of subdivision (a)(2), a "valid court order shall include any order of a circuit court regarding a juvenile who has been brought before the court and made subject to a court order. *The juvenile who is the subject of the order shall receive full due process rights.*" (Emphasis added.) Here, Allen was not afforded his due process rights; therefore, he is being detained in a juvenile detention facility in violation of § 9-27-336(a). Consequently, the trial court exceeded its authority in committing him; we discuss this holding in more detail below.

■ The crux of Allen's argument is the fact that he was deprived of due process. In particular, Allen argues that he was never served with a copy of the contempt petition or a written order to show cause why he should not be held in contempt, and he was never provided with defense counsel at the contempt hearing. The contempt statute, § 16-10-108(c), requires that a "party charged [with contempt] shall be notified of the accusation

---

[1] "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Bloom*, 391 U.S. at 201. It is for this reason, the Court wrote, that an alleged contemnor is afforded an array of constitutional protections.

and shall have a reasonable time to make his defense." This court has construed this provision to mean that one is entitled to due process protections. *See Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988). This court has further held that no sentence involving loss of liberty can be imposed when there has been a denial of counsel. *See White v. State*, 277 Ark. 429, 642 S.W.2d 304 (1982). Additionally, this court has emphasized that the constitutional right to counsel has been extended to juveniles; "[w]hen that right has been denied to a juvenile within the juvenile commitment process, then *an order emanating from such a proceeding which does not reflect the fact that the juvenile was represented by legal counsel will not constitute a facially valid order.*" *Robinson*, 282 Ark. at 265 (granting habeas relief where juveniles were not represented by counsel) (emphasis added).

Here, nothing indicates that Allen was represented by defense counsel during the criminal contempt proceedings. To be sure, he had the services of an attorney ad litem, but the ad litem only represented "the best interest of [the] juvenile," *see* Ark. Code Ann. §§ 9-27-303(7) and 9-27-316(f)(5)(A) (Supp. 2003), and not Allen's due process and other constitutional rights, as a defense attorney would. Section 9-27-316 makes it plain that, in both delinquency and FINS cases, a juvenile shall have the right to counsel. *See* § 9-27-316(a)(1). Section 9-27-316 also provides that the court may appoint an attorney ad litem "to represent the best interests of a juvenile in any case before the court[.]" § 9-27-316(f)(2).[2] However, as the right to counsel and the right to an attorney ad litem are mentioned in separate subdivisions of the statute, it is apparent that these are not intended to be the same person.

The State responds that the record is insufficient to determine whether Allen's due process rights were violated. However, DHS, in whose custody Allen was placed upon the FINS adjudication, admits and acknowledges that Allen did not have an attorney appointed to represent and defend him; in addition, DHS asserts that the attorney ad litem was not authorized to defend the juvenile in a criminal or delinquency action. Because Allen was deprived of his right to counsel, his due process rights

---

[2] Section 9-27-316(f)(1) provides that the court *shall* appoint an attorney ad litem to represent the best interests of the juvenile when a dependency–neglect petition is filed.

were violated, and the court's orders were invalid. It follows, then, under § 9-27-336(a)(2)(A) and (B), that the court, not having issued a valid order, could not order Allen to be detained at the juvenile detention facility. Therefore, the court exceeded its authority to enter the order of commitment. Accordingly, we hold the trial court's order is invalid, and the petitioner's request for writ of habeas corpus is granted.

■■ Because we grant Allen's petition for writ of habeas corpus, we need not fully consider or address DHS's petition for writ of certiorari. A writ of certiorari is extraordinary relief, and we will grant it only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Arkansas Dept. of Human Servs. v. Collier*, 351 Ark. 506, 95 S.W.3d 772 (2003). A writ of certiorari lies only where it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, and there is no other adequate remedy. *Id.* Here, Allen obviously has an adequate remedy through his habeas petition; therefore, his petition for writ of certiorari is moot.

Writ of habeas corpus granted.